UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SAMANTHA TOTH,

                    Plaintiff,

          V.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]

                 Defendant.
_____

**REPORT AND
RECOMMENDATION**

12-CV-1532
(NAM/VEB)

## I. INTRODUCTION

In January of 2010, Plaintiff Samantha Toth applied for Supplemental Security Income ("SSI") benefits under the Social Security Act. Plaintiff alleges that she has been unable to work since April of 2009. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, by and through her attorney, Mark M. McDonald, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On October 2, 2013, the Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 14).

---

[1]On February 14, 2013, Carolyn W. Colvin took office as Acting Social Security Commissioner. The Clerk of the Court is directed to substitute Acting Commissioner Colvin as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

## II. BACKGROUND

The procedural history may be summarized as follows:

Plaintiff applied for benefits on January 20, 2010, alleging disability beginning on April 1, 2009. (T at 175-180).[2] The application was denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on February 23, 2011, in Syracuse, New York, before ALJ Barry E. Ryan. (T at 38). Plaintiff appeared with an attorney and testified. (T at 43-65).

On March 26, 2011, ALJ Ryan issued a decision denying Plaintiff's application for benefits. (T at 22-37). The ALJ's decision became the Commissioner's final decision on August 24, 2012, when the Social Security Appeals Council denied Plaintiff's request for review. (T at 1-6).

Plaintiff, through counsel, timely commenced this action on October 10, 2012. (Docket No. 1). The Commissioner interposed an Answer on January 25, 2013. (Docket No. 5). Plaintiff filed a supporting Brief on April 3, 2013. (Docket No. 10). The Commissioner filed a Brief in opposition on June 19, 2013. (Docket No. 13).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

For the reasons that follow, it is recommended that Plaintiff's motion be granted, the Commissioner's motion be denied, and that this case be remanded for calculation of

---

[2]Citations to "T" refer to the Administrative Transcript. (Docket No. 6).

[3]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

benefits.

## III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado

v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[4]

---

[4]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since January 20, 2010, the application date. (T at 27).  The ALJ found that Plaintiff's diabetes was a "severe" impairment under the Social Security Act. (T at 27).  However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 27-28).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of light work, as defined in 20 CFR § 416.967 (b).  (T at 29-32).  The ALJ determined that Plaintiff had no past relevant work. (T at 32).  Considering Plaintiff's age (22 years old on the application date), education (high school), and RFC, the ALJ found that there were jobs that exist in significant numbers in the national economy that

Plaintiff can perform. (T at 32-33).

As such, the ALJ concluded that Plaintiff had not been under a disability, as defined under the Act, from January 20, 2010 (the application date) through March 16, 2011 (the date of the ALJ's decision). (T at 33). As noted above, the ALJ's decision became the Commissioner's final decision on August 24, 2012, when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

### 2.    Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. She offers three (3) principal arguments in support of this position. First, Plaintiff contends that the ALJ and Appeals Council did not properly assess the opinions of her treating physician. Second, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. Third, she challenges the ALJ's credibility assessment. Each argument will be addressed in turn.

### a.    Treating Physician's Opinion

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[5]

Even if a treating physician's opinion is deemed not to be deserving of controlling

---

[5]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

On February 1, 2010, Dr. Ferrol Lee, Plaintiff's treating physician, completed a Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination form. Dr. Lee diagnosed type I diabetes, with neuropathy, possible seizure disorder, and migraine headaches. (T at 304). He assessed moderate limitations with regard to lifting, carrying, and using hands. (T at 304). He opined that when Plaintiff's blood sugars were low she would have moderate limitations with regard to understanding, remembering, and carrying out instructions; maintaining attention/concentration; making simple decisions; interacting appropriately with others; maintaining socially appropriate behavior without exhibiting behavior extremes; and functioning in a work setting at a consistent pace. (T at 304). Dr. Lee noted moderate episodes of passing out or black-out episodes due to low blood sugars. (T at 305).

In May of 2010, Dr. Lee completed a Functional Capacity Questionnaire, in which he opined that Plaintiff was limited to sitting for 3 hours during an 8-hour work day and was likewise limited to standing/walking for 3 hours in an 8-hour workday. (T at 111). He found that she could occasionally lift 10 pounds, rarely lift 20 pounds, and never lift more than 50

pounds. (T at 111). Dr. Lee estimated that Plaintiff would be absent from work more than 4 days per month as a result of her impairments or treatment. (T at 111). He described Plaintiff's prognosis as "poor." (T at 112). Dr. Lee reported that he had treated Plaintiff every four to six months since 1996. (T at 111).

Dr. Lee completed another disability form on August 4, 2010. He opined that Plaintiff was not a malingerer and diagnosed her as suffering from depression and anxiety. (T at 315-16). Dr. Lee concluded that Plaintiff was incapable of performing even a "low stress" job and was limited to standing/walking for about 2 hours in an 8-hour workday. (T at 316). He found that Plaintiff could sit for at least 6 hours in an 8-hour work day. (T at 316). Dr. Lee opined that Plaintiff would need to take unscheduled 10 minute-breaks approximately once an hour. (T at 317). He assessed that Plaintiff could occasionally lift 10 pounds, rarely lift 20 pounds, and never lift more than 50 pounds. (T at 317). Dr. Lee estimated that Plaintiff would be absent from work more than 4 days per month as a result of her impairments or treatment. (T at 318).

The ALJ discounted Dr. Lee's opinions, noting an internal inconsistency and finding the limitations assessed by Dr. Lee contradicted by the conservative medical treatment. (T at 32). The ALJ did not properly apply the treating physician's rule and his conclusion is not supported by substantial evidence.

First, the inconsistency noted by the ALJ should not have been afforded great weight or, in the alternative, should have been addressed by further development of the record. In the May 2010 report, Dr. Lee indicated that Plaintiff had sensory loss and muscle weakness. (T at 309). In his August 2010 report, Dr. Lee reported that Plaintiff did not have these symptoms. (T at 315). Although this discrepancy is curious and not susceptible to

8

easy explanation, it does not provide a basis for discounting significantly the treating physician's opinions. Dr. Lee was consistent with regard to his conclusion that Plaintiff was not able to work with reasonable continuity due to recurrent hypoglycemic episodes and that she would miss more than 4 days per month of work due to her impairments. (T at 310, 318). These conclusions were more significant than the discrepancy regarding sensory loss and muscle weakness. In other words, even if the ALJ decided to discount Dr. Lee's findings with respect to sensory loss and muscle weakness due to the inconsistency in reports, that would not, without more, provide a basis for rejecting the balance of Dr. Lee's assessments, which were consistent.

Moreover, if the ALJ considered the inconsistency so significant, he was obliged to re-contact Dr. Lee for an explanation.[6] See Taylor v. Astrue, No. CV-07-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence"); SSR 96-5p (ALJs are obliged to "make every reasonable effort to recontact [treating] sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear.").

Second, it was not proper for the ALJ to discount the treating physician's opinions because he believed the "type of medical treatment" received by Plaintiff was not the type

---

[6]During the administrative hearing, the ALJ noted a further discrepancy in Dr. Lee's opinions. In the February 2010 assessment, Dr. Lee noted no limitations as to walking, standing, or sitting (T at 304), a conclusion at odds with his later assessments. However, Dr. Lee was consistent in all of his opinions (including the February 2010 assessment) to the effect that Plaintiff's recurrent episodes of low blood sugar would significantly impact her ability to perform basic work activities. Moreover, the ALJ did not cite the no limitations as to walking, standing, or sitting inconsistency in his decision and, in any event, would have been obliged to re-contact Dr. Lee before discounting his opinion on this basis.

"one would expect for a disabled individual." (T at 32).  Further, given the chronic nature

of Plaintiff's condition, it is not clear what "type of treatment" the ALJ expected her to

receive.   The ALJ is not a physician and the courts caution against this sort of

"circumstantial critique."  See Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir.2008)("Nor is

the opinion of the treating physician to be discounted merely because he has

recommended a conservative treatment regimen.  The ALJ and the judge may not 'impose

[ ] their [respective] notion[s] that the severity of a physical impairment directly correlates

with the intrusiveness of the medical treatment ordered.... [A] circumstantial critique by

non-physicians, however thorough or responsible, must be overwhelmingly compelling in

order to overcome a medical opinion.'")(quoting Shaw v. Chater, 221 F.3d 126, 134-35(2d

Cir.2000)).

In addition, the ALJ discounted Dr. Lee's opinions because Plaintiff's frequency of

treatment "suggest[ed] that her symptoms may not have been as limiting as [she] alleged

. . . ." (T at 32).  However, the ALJ was obliged to ask Plaintiff to explain the frequency of

treatment before making such a finding, and failed to do so.[7]

Accordingly, this Court finds that the ALJ's assessment of the treating physician's

opinion was not rendered in accordance with applicable law and is not supported by

substantial evidence.

In addition, the Appeals Council did not properly consider an additional assessment

---

[7]The relevant SSR is SSR 96-7p, which provides that a claimant's "statements may be less
credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical
reports or records show that the individual is not following the treatment as prescribed." Under that ruling,
however, an ALJ must not draw an adverse inference from a claimant's failure to seek or pursue treatment
"without first considering any explanations that the individual may provide, or other information in the case
record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." Id.

prepared by Dr. Lee after the ALJ's decision. On July 28, 2011, Dr. Lee reported that Plaintiff suffered from diabetes mellitus Type I complicated by wide, unpredictable fluctuations of blood glucose values. (T at 389). He opined that she would need to take a break from physical and/or work activity for periods varying from 15 minutes to 24 hours. (T at 390). Although Dr. Lee's report was prepared after the date of the ALJ's decision, the physician indicated that the limitations he assessed had been reasonably consistent and continuing since April 1, 2009. (T at 391).

The Social Security Administration's Appeals Council is required consider "new and material" evidence if it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b); see also § 416.1470(b); Perez v. Chater, 77 F.3d 41, 45 (2d Cir.1996). The Appeals Council "will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b); see § 416.1470(b). "

Even if "the Appeals Council denies review after considering new evidence, the [Commissioner]'s final decision necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." Perez, 77 F.3d at 45. Accordingly, the additional evidence becomes part of the administrative record reviewed by the district court. Id. at 45-46. The role of the district court is to review whether the Appeals Council's action was in conformity with these regulations. See 42 U.S.C. § 405(g) (sentence five); see, e.g., Woodford v. Apfel, 93 F.Supp.2d 521, 528 (S.D.N.Y.2000) (concluding that the "Appeals Council erred when it determined that [the new] evidence was insufficient to trigger review of the ALJ's decision").

Here, the Appeals Council's consideration of Dr. Lee's July 2011 report was limited

to a single sentence: "this information does not provide a basis for changing the [ALJ's] decision." (T at 1). This was insufficient as a matter of law. "[W]here newly submitted evidence consists of findings made by a claimant's treating physician, the treating physician rule applies, and the Appeals Council must give good reasons for the weight accorded to a treating source's medical opinion." James v. Commissioner of Social Security, No. 06-CV-6180, 2009 WL 2496485, at *10 (E.D.N.Y. Aug. 14, 2009).

The Second Circuit has said "the Appeals Council [has] an obligation to explain the weight it g[ives] to the opinions of [a treating physician]." Snell v. Apfel, 177 F.3d 128, 133-34 (2d Cir.1999)(holding that the Commissioner "is required to explain the weight it gives to the opinions of a treating physician"); 20 C.F.R. § 404.1527(d)(2) ( "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

"Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Snell, 177 F.3d at 134; see also; Shrack v. Astrue, No. 3:08-CV-00168, 2009 WL 712362, at *3 (D.Conn. Mar. 17, 2009)("Importantly, the treating physician rule applies to the Appeal's [sic] Council when the new evidence at issue reflects the findings and opinions of a treating physician.").

Here, the Appeals Council not only failed to provide "good reasons" for disregarding the treating physician's opinion, it did not provide any reasons at all. This constitutes a further ground for remand.

### b. RFC

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y.1990).

In this case, the ALJ concluded that Plaintiff retained the RFC to perform the full range of light work (T at 29), but did not perform a "function-by-function" assessment of Plaintiff's RFC or explain how much weight, if any, he was affording to Dr. Lee's assessment of Plaintiff's work-related limitations. This was error.

The ALJ was required to make a function by function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch, based on medical reports from acceptable medical sources that include the sources' opinions as to the claimant's ability to perform each activity. 20 C.F.R. § 404.1513(c)(1); §§ 404.1569a(a), 416.969a(a); Martone v. Apfel, 70 F.Supp.2d 145, 150 (N.D.N.Y.1999). Once that analysis has been completed, the RFC may be expressed in terms of the exertional levels of work -

e.g, sedentary, light, medium, heavy, and very heavy. Hogan v. Astrue, 491 F. Supp.2d 347, 354 (W.D.N.Y.2007).

Until recently, courts in the Second Circuit were divided on the question of whether the failure to perform a "function-by-function" analysis was a *per se* reason for remand. See Knighton v. Astrue, 861 F. Supp. 2d 59, 66 (N.D.N.Y. 2012) (collecting cases). This Court had expressed the view that the absence of a function-by-function analysis should be grounds for remand only if it frustrates meaningful review of a material aspect of the claimant's case. In a recent decision, the Second Circuit adopted the same view and declined to endorse an automatic remand rule. See Cichocki v. Astrue, – F.3d –, 2013 WL 4749644, at *4 (2d Cir. Sep. 5, 2013)("Adopting a per se rule that these functions must be explicitly addressed on pain of remand (no matter how irrelevant or uncontested in the circumstances of a particular case) would thus not necessarily ensure that all relevant functions are considered.").

Thus, the absence of a function-by-function assessment is not a *per se* reason for remand. However, in this case, as noted above, this Court cannot determine which of Dr. Lee's assessments the ALJ accepted and which he rejected in formulating his RFC determination. For example, Dr. Lee consistently concluded that Plaintiff's recurrent hypoglycemic episodes would require her to take unexpected breaks during the work day, be absent from work several times per month, and generally prevent her from maintaining a normal work schedule. The ALJ presumably rejected these aspects of the treating physician's opinions when reaching his conclusion that Plaintiff could perform the full range of light work, but the lack of a function-by-function analysis frustrates this Court's attempt to determine the basis for the decision and the effort to determine whether the conclusion

14

is otherwise supported by substantial evidence. Accordingly, the ALJ's RFC determination likewise cannot be sustained.

### c. Credibility

A claimant's subjective complaints are an important element in disability claims, and must be thoroughly considered. See See Ber v. Celebrezze, 332 F.2d 293, 298, 300 (2d Cir.1964). Further, if claimant's testimony regarding pain and limitations is rejected or discounted, the ALJ must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F. Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....

> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

> 1.     [Plaintiff's] daily activities;
> 2.     The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
> 3.     Precipitating and aggravating factors;
> 4.     The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
> 5.     Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
> 6.     Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
> 7.     Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified as follows:

She completed 11th grade, but later obtained a GED and attended college for a year. (T at 45). Stress aggravates her diabetes and causes significant swings in her blood sugar levels. (T at 48-49). She has at least one episode of low blood sugar each day. (T at 49-

50). The glucose fluctuations cause memory loss, migraine headaches, vision problems, and emotional difficulties. (T at 51). She has difficulty with fine motor skills and recurrent seizures. (T at 51). She performs house work and other small chores on "good days," but otherwise requires her husband's help. (T at 53).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements regarding the intensity, persistence, and limited effect of the symptoms were not credible to the extent they were inconsistent with the RFC. (T at 30). This assessment is flawed in three respects.

First, while a "claimant's credibility may be questioned if it is inconsistent with the medical evidence . . . , it is improper to question the plaintiff's credibility because it is inconsistent with the RFC determined by the ALJ." Gehm v. Astrue, No. 10-CV-1170, 2013 WL 25976, at *5 (N.D.N.Y. Jan. 2, 2013); see also Patterson v. Astrue, No. 11-CV-1143, 2013 WL 638617, at *14 (N.D.N.Y. Jan. 24, 2013)("This assessment of plaintiff's credibility is formed only on the basis of how plaintiff's statements compare to the ALJ's RFC assessment. The ALJ's analysis is therefore fatally flawed, because, it demonstrates that she improperly arrived at her RFC determination before making her credibility assessment, and engaged in a credibility assessment calculated to conform to that RFC determination.").

Second, the ALJ placed undue emphasis on the fact that Plaintiff could "care for her three young children at home," which he found inconsistent with her claims of disabling impairments, (T at 30). However, Plaintiff testified that she receives a significant degree of help from her husband, who is not employed and is available to help with child care during Plaintiff's frequent diabetic episodes. (T at 53, 54, 58, 60). Moreover, "the mere fact

17

that [a Plaintiff] is mobile and able to engage in some light tasks at [her] home does not alone establish that [s]he is able to engage in substantial gainful activity." <u>Lecler v. Barnhart</u>, 2002 WL 31548600, at *7 (S.D.N.Y. Nov. 14, 2002) <u>quoting</u> <u>Gold v. Sec'y of Health, Ed. & Welfare</u>, 463 F.2d 38, 41 n. 6 (2d Cir. 1972)); <u>see</u> <u>also</u> <u>Bjornson v. Astrue</u>, 671 F.3d 640, 647 (7th Cir. 2012)("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . ., and is not held to a minimum standard of performance, as she would be by an employer. *The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.*")(citations omitted)(emphasis added).

Third, the ALJ's errors with regard to the treating physician's opinions (as outlined above) impacted his assessment of Plaintiff's credibility. Dr. Lee, who had an extensive treating relationship with Plaintiff, supported her testimony concerning the limiting effect of her symptoms and further observed that those symptoms would likely be aggravated by an increase in stress and other work-related demands.

The ALJ's decision to discount Plaintiff's credibility was thus not supported by substantial evidence.

### 3. Remand for Calculation of Benefits

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" <u>Butts v. Barnhart</u>, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper

disposition of [a] claim." <u>Kirkland v. Astrue</u>, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).

Under the Second Circuit's rulings, a remand solely for calculation of benefits may be appropriate when the court finds that there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision...." <u>Butts v. Barnhart</u>, 388 F.3d 377, 385-86 (2d Cir.2004) (quoting <u>Rosa v. Callahan</u>, 168 F.3d 72, 83 (2d Cir.1999)); <u>see also</u> <u>Johnson v. Bowen</u>, 817 F.2d 983, 986 (2d Cir.1987) (remand for calculation of benefits appropriate where record "compel[s] but one conclusion under the ... substantial evidence standard."); <u>Parker v. Harris</u>, 626 F.2d 225, 235 (2d Cir.1980) (remand solely for calculation of benefits appropriate where "the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose").

In the present case, this Court finds persuasive proof of disability. As outlined above, Plaintiff's treating physician concluded that her frequent diabetic episodes would preclude her from performing the basic demands of work on a sustained basis. To wit, she would need to take frequent, unscheduled breaks and would be absent from work at least 4 days per month due to her impairment. (T at 111, 310, 317, 318, 390). No examining provider offered an opinion to the contrary. The ALJ's assessment was based on a flawed analysis of the treating physician's opinions and an improper decision to discount Plaintiff's credibility. Accordingly, this Court finds that remand for further consideration would serve no productive purpose and recommends that this case be remanded for calculation of benefits.

## IV. CONCLUSION

This Court recommends that the Plaintiff be GRANTED judgment on the pleadings,

that the Commissioner's motion for judgment on the pleadings be DENIED, and that this case be remanded for calculation of benefits.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:         December 20, 2013

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.


Dated:      December 20, 2013

            Syracuse, New York